83 246
95 445

83 246
110 828

CASE 36—MOTION—OCTOBER 6.

# Commonwealth v. Hawkins, &c.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. IN CONSTRUING A POWER OF ATTORNEY the intention of the parties and not the letter must control, and if the object can be ascertained from the instrument, it must be so construed as to effectuate that object.

A power of attorney authorizing the signing of the maker's name as surety for a sheriff in a bond for the collection of the State revenue, and also "to indemnify any liability" of said sheriff on a former bond "against any loss or damage, by reason of the suretyship thereon," authorized the execution of a new bond containing a clause of indemnity to the sureties in the old one.

2. PRINCIPAL AND AGENT.—If the line can be drawn between the good execution of a power and the excess, and they are not so interwoven as to be inseparable, then the former is binding upon the principal.

The fact that an agent, authorized to sign his principal's name as a surety in a sheriff's bond for the collection of the State revenue, executed a bond containing a covenant of indemnity to the sureties in a former bond did not render the covenant to the State inoperative, even though the covenant of indemnity was unauthorized.

3. APPARENT AUTHORITY OF AGENT.— A principal is responsible for the appearance of the agent's powers, and if the act of the agent is within his apparent authority the principal is bound.

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLANT.

1. In construing the power of attorney the intention and not the letter must control. (Schultz v. Johnson, 5 B. M., 499; Meriwether v. Lewis, 9 B. M., 168.)

2. As the covenant of indemnity to the former sureties and the covenant to the State are separate and distinct, the latter may be enforced even though the former be void because the agent exceeded his authority in including it in the bond. (Vanada's Heirs v. Hopkins, 1 J. J. M., 294.)

JOHN W. RODMAN FOR APPELLEES.

1. The power of attorney did not authorize the agent to execute a bond containing a clause of indemnity to the sureties in the old bond.

2. A special agent does not bind his principal unless his authority is strictly pursued, and those dealing with him are chargeable with

Commonwealth v. Hawkins, &c.

notice of its extent. (Dunlap's Paley's Agency, 202; 2 Kent's Com., 620; Story on Agency, sections 21, 126; 1 Am. Leading Cases, 560, and note; 8 Wendell, 494; Thompson v. Stewart, 3 Conn., 171; 15 Johns., 44; 18 Johns., 363; Batty v. Corswell, 2 Johns., 48; DeHart, &c., v. Wilson, &c.. 6 Mon., 580; 4 J. J. M., 456; Ross v. Davis, *Ibid.*, 386; Craycroft v. Selvage, &c., 10 Bush, 709; Craighead v. Peterson, 72 N. Y.; Wood v. Goodridge, 6 Cush., 117; Attwood v. Munnings, 7 B. & C., 278; Hubbard v. Elmer, 7 Wend., 446; Hodge v. Combs, 1 Black, 192; Draper v. Rice, 56 Iowa, 114.)

3. The act of the agent is regarded as a whole, and can not be separated. It must be good for all it purports to be, or good for nothing. (DeHart, &c., v. Wilson, &c., 6 Mon., 580; Park v. President and Managers of S. & L. Turnpike Road Company, 4 J. J. M., 456.)

4. As to what is necessary to bind one as surety. (Billington v. Commonwealth, 79 Ky., 401.)

W. LINDSAY ON SAME SIDE, IN PETITION FOR REHEARING.

1. The intention is to be gathered from the words of the writing. There can be no construction or interpretation of words which mean nothing.

2. It is not a question of mere intention upon the part of the *surety* when he is sought to be bound. (Billington v. Commonwealth, 79 Ky., 400.)

3. The power of attorney ought to be as certain as the bond to be executed pursuant to it. (Trumbow v. Aldrich, 8 N. H., 31.)

4. The bond upon which appellant seeks to recover was taken at the instance, and for the benefit, of the dissatisfied sureties. It is but a single undertaking, and must be wholly good or wholly bad. (General Statutes, chapter 100, section 25; *Ibid.*, chapter 104, sections 1, 2, 3, 4, 5, 6 and 7; Commonwealth v. Adams, 3 Bush, 41; Bartley v. Fraine, 4 Bush, 375; DeHart v. Wilson, 6 Mon., 577.)

5. The county court saw, or should have seen, that the bond offered was not the bond authorized by the power of attorney to be executed. (Bracken County, &c., v. Daum, 80 Ky., 388.)

6. If the signature of Berry's name to the bond upon which appellant seeks to recover was unauthorized, then the bond does not correspond with the paper accepted by the county court, and no recovery can be had upon it against any of the obligors therein. (Fletcher v. Leight, Barrett & Co., 4 Bush, 303.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The sheriff of Franklin county on December 11, 1880, executed his bond for the collection of the State

revenue for 1881, with John W. Jackson, R. D. Armstrong, and others as his sureties. At the June term, 1881, of the Franklin County Court the two sureties above-named made a motion, upon due notice, requiring the sheriff to give a new bond, and to indemnify them in their said suretyship. An order was entered requiring the sheriff "to execute a new bond, conditioned for the collection of the State revenue of said county for the year 1881, and for indemnity to said R. D. Armstrong and John W. Jackson for any loss, cost or damage legally incurred by them by reason of their suretyship in the bond executed by said E. O. Hawkins, as sheriff aforesaid."

The order further recites, that "said E. O. Hawkins, together with Hiram Berry (and others, naming them), his sureties, entered into and acknowledged a covenant to the Commonwealth of Kentucky, conditioned for the collection by said Hawkins, as sheriff of Franklin county, of the State revenue of said county for the year 1881, and for indemnity to R. D. Armstrong and J. W. Jackson for any loss, cost or damage legally incurred by them by reason of their suretyship in the bond executed by said Hawkins as sheriff of said county with them and others as sureties, dated December 11, 1880."

The bond approved by the order stipulates, "that the said E. O. Hawkins, as sheriff, shall well and truly collect, account for, and pay over to persons entitled to receive the same according to law, the revenue and public dues of the county of Franklin for the year 1881, and that he shall, when called upon by the Auditor, settle his accounts and pay over the amount, if

any, of public money in his hands belonging to the Commonwealth; and that the said E. O. Hawkins shall in all things well and truly demean himself and perform the duties of collector of the State revenue of said county; and we further covenant to indemnify J. W. Jackson and R. D. Armstrong against any loss or damage legally incurred by them by reason of their suretyship in the bond executed by E. O. Hawkins as sheriff of Franklin county, with them and others as sureties, dated December 11, 1880."

It was signed as to the appellee Berry, "Hiram Berry by Ira Julian, attorney in fact," by virtue of a power of attorney, which reads thus:

"I, Hiram Berry, of Franklin county, Kentucky, do hereby authorize and empower Ira Julian to sign and deliver for me and in my name as surety for E. O. Hawkins on three bonds—

"1st. A bond for the collection and payment of the State revenue of Franklin county for the year 1881, and also *to indemnify any liability* of said Hawkins on his bond executed the 11th December, 1880, against any loss or damage by reason of the suretyship thereon.

"2d. A bond for the faithful discharge of the duties of said Hawkins, as sheriff on the aforesaid bond, and also to indemnify any of his sureties on his official bond executed December 11, 1880, against any loss or damage by reason of their suretyship thereon.

"3d. A bond for the collection of the county levy for Franklin county, and payment of all sums collected by said Hawkins as sheriff, to the proper au-

·thorities, and to indemnify any surety on his previous bond, executed the 11th December, 1880, against any loss or damage by reason of the said suretyship.

"This June 1, 1881.

"HIRAM BERRY."

To this motion by the State, upon the bond exe-·cuted June 6, 1881, for a deficit of $5,051.87 of the State revenue, the appellee Berry presented a plea ·of *non est factum*, based upon the ground that the power of attorney from him did not authorize the execution of the bond, or, in other words, that the bond contained a covenant of indemnity to the sure-ties, Jackson and Armstrong, which was not author-·ized by the power of attorney ; and that, therefore, he was in no way liable upon the bond.

The sole question is the sufficiency of the power ·of attorney. The learned special judge who tried the ·cause below held, upon demurrer, that the answer was sufficient, and dismissed the motion as to Berry; .and our regard for his opinion has caused us to hes-itate as to the conclusion which we have reached. But to our minds it is the only one consistent with both reason and law, and it must, therefore, be adopted.

The language in the first clause of the power of ·attorney, and which relates to the execution of the State revenue bond, is.: "And also to indemnify *any* .*liability* of said Hawkins on his bond."

This, if interpreted literally, means nothing. Nei-·ther Hawkins, owing to his being the principal, nor ·"any liability" could be indemnified.

The *intention* of the parties and not the *letter*

must control in the construction of the instrument. The purpose and design of it must be considered, and it must be supposed that the parties intended to make it effectual for some purpose. If the object can be ascertained from the instrument, then it must not be so construed as to make it ineffectual, because that would frustate the intention of the maker. It was well said in the case of Vanada's Heirs v. Hopkins' Adm'r, &c., 1 J. J. Marshall, 287:

"But all powers conferred must be construed with a view to the design and object of them, and the means most usual and proper for carrying their design and object into effect, having respect to the language which the maker of the power employs to convey his meaning and intent."

It is true that the language of a power of attorney can not be enlarged by construction so as to make it mean what the maker did not intend; but when the power in question is read in the light of the above rule, and all three of its clauses are considered, we think there is no doubt but what the maker intended by it to authorize the execution of not only a new bond, but one containing a clause of indemnity to any of the sureties in the old one. It at least has this appearance, and a principal is responsible for *the appearance* of the agent's powers. If he has clothed him with apparent power, he is, and it is right that he should be, bound by his act. It was not necessary, perhaps, to decide this question, because another, to our mind, is decisive of the case, even if we were in error in the above conclusion.

The first section of chapter 104, General Statutes, provides, that a motion may be made by a surety upon an officer's bond for a new bond, and to obtain indemnity as to the existing one or *either ;* and the sixth section of the same chapter provides:

"If a new bond is given, it shall operate as a discharge of all the sureties making the motion from all liability for the acts of the principal thereafter done; and if the object be so specified, the bond shall contain a stipulation or covenant to indemnify the said sureties against any loss, cost or damage legally incurred by reason of said suretyship."

The question in this case is between the State and the appellee Berry ; and not between him and the sureties upon the former bond. It is a motion upon the new bond for the unpaid revenue ; and the power of attorney in express words authorized the execution of a new bond; and even if it had not authorized (as we think it did) the covenant of indemnity to the sureties in the old bond, yet should the covenant of the new bond to the State therefore be inoperative?

We think not. It is true that Julian was a special agent for a particular purpose ; and it is well settled that one dealing with such an agent is required to know his power ; and if it is exceeded, or the act varies substantially from his authority, then his action is *ultra vires* and not binding upon his principal.

The cases which lay down this doctrine in general terms are quite numerous ; but we apprehend that it is not meant by this, that if the agent is authorized by the same instrument to do two separate things, affecting different persons, and in the one case he

exceeds his authority, but does not in the other, that therefore his action is void *in toto* as to his principal, even if his action as to both is evidenced by the same instrument.

The reason a principal is not bound by the act of a *particular* agent, where he has exceeded his power, is that he should not be held liable without *his consent*. If A authorizes B to buy a piece of land at fifty dollars per acre, and he gives sixty for it; or if he authorizes him to buy a particular tract of land and he purchases another, or if he has authorized him to give a note payable in a year, and he makes it payable in sixty days; then in these cases A would not be liable; but if he authorizes him to buy one hundred acres of land of C, and a like quantity of D, a purchase of the latter of a greater quantity would surely not release A from a purchase of C of the quantity which A had authorized.

Lord Coke said: "Where a man doeth that which he is authorized to do and more, there it is good for that which is warranted, and void for the rest." (Co. Lit., 258a.)

Story says: "Where there is a complete execution of the authority, and something *ex abundanti* is added which is improper, there the execution is good, and the excess only void." (Story on Agency, 201.)

As early as the case of Alexander v. Alexander, 2 Vesey, 640, decided in 1755, it was held that where a power was exceeded, but the excess was clearly distinguishable from that which fell within it, the execution of the latter was binding on the principal.

The same doctrine is to be found in the cases of

Hammond v. Michigan State Bank, Walker's Ch. Rep., 214; Drumright v. Philpot, 16 Ga., ·424, and Vanada's Heirs v. Hopkins' Adm'r, &c., *supra*. In the case now presented there are two separate covenants in the bond—one to the State and one to the old sureties—and there is no trouble in separating what the attorney had the unquestioned right to do under the power from what as is claimed he had no right to do.

We conclude that the correct rule is, that if the line can be drawn between the good execution of the power and the excess, and they are not so interwoven as to be inseparable, then the former is binding upon the principal.

Even if the attorney in this instance had no power to execute the bond as to the covenant of indemnity, yet the line between it and the covenant to the State is so marked and so easily drawn that the appellee Berry is responsible upon the latter.

Judgment reversed, with directions to sustain the demurrer to the answer, and for further proceedings. consistent with this opinion